UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERESA GARCIA,<br><br>Plaintiff,<br><br>v.<br><br>SANOFI PASTEUR INC., et al.,<br><br>Defendants. | Case No. 1:20-cv-00850-JLT-EPG<br><br>ORDER GRANTING IN PART AND DENYING IN PART AS MOOT MOTIONS TO DISMISS<br><br>(Docs. 7, 15) |

## I.  INTRODUCTION

Plaintiff brings this personal injury lawsuit against Merck Sharp & Dohme Corp. ("Merck"), the manufacturer and distributer of the Pneumovax® 23 ("Pneumovax 23") pneumococcal disease vaccine, as well as against Sanofi Pasteur Inc. ("Sanofi"), the manufacturer of the Adacel® ("Adacel") Tetanus, Diphtheria, Pertussis ("TDaP") vaccine. (*See generally*, Doc. 2-1 ("Compl.").) Plaintiff claims that following inoculation with both vaccines during a medical appointment on or about April 3, 2018, she developed right shoulder pain and a partial tear of her right rotator cuff. (*Id*., ¶¶ 9–13.) The Complaint, which was filed on May 19, 2020, and was removed to this court by Merck, (*see* Doc. 2), alleges the following causes of action against Merck and Sanofi: strict product liability (first and second causes of action); negligent product liability (third and fourth causes of action); strict products liability for failure to warn (fifth and sixth causes of action); and general negligence (seventh and eighth causes of action), (Doc. 2-1.)

1

On July 10, 2020, Merck moved to dismiss all the claims against it. (Doc. 7.) Sanofi similarly moved to dismiss all the claims against it on August 21, 2020. (Doc. 15.) Both motions were ripe for decision as of late September 2020 but remained unaddressed for some time due to the judicial resource emergency in this district. This case was reassigned to the undersigned on January 7, 2022. (Doc. 25.) For the reasons set forth below, the motions will be granted in part and denied as moot in part.

## II.   STANDARD OF DECISION

The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the legal sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). A dismissal may be warranted where there is "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989). However, the court will not assume the truth of legal conclusions cast in the form of factual allegations. *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Federal Rule of Civil Procedure 8(a) does not require detailed factual allegations, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive dismissal under Rule 12(b)(6). *Iqbal*, 556 U.S. at 676. A complaint must do more than allege mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

## III.   DISCUSSION

Both Merck and Sanofi move to dismiss all the claims as insufficiently pleaded. In that regard, their motions almost entirely overlap. Sanofi also moves to dismiss on the ground that

many forms of vaccine-related injury claims are preempted by the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa-1–33, and *Bruesewitz v. Wyeth LLC*, 562 U.S. 223 (2011). In the interest of efficiency, the Court takes up Merck's motion first, and then addresses issues raised in Sanofi's to the extent necessary.

**A.     Merck's Motion to Dismiss**

   1.     Strict Liability Claim

The strict liability claim against Merck (second cause of action) alleges broadly that the Pneumovax 23 vaccine "was defective in design, manufacture, materials selection, testing, and research at the time it left the possession" of Merck. (Compl., ¶ 31.) As Merck correctly points out, there are several potential theories of liability embedded in this language, and the Court may separately address each theory at the pleading stage. *See Haley v. Bayer Healthcare Pharms. Inc.*, No. SACV 16-546-JLS (EX), 2016 WL 10966426, at *3 (C.D. Cal. June 9, 2016).

   a.     *Design Defect*

Merck moves to dismiss any strict liability claim premised upon design defect, arguing that California courts routinely dismiss claims for strict liability design defect against manufacturers of FDA-approved pharmaceutical products that "can save lives and reduce pain and suffering," so long as "the drug was properly prepared and accompanied by warnings of its dangerous propensities that were either known or scientifically knowable at the time of distribution." (Doc. 7 at 14 (citing *Brown v. Superior Court*, 44 Cal. 3d 1049, 1061–65, 69 (1988).) Plaintiff concedes that any such claim should be dismissed, so the Court will not evaluate this argument in detail. Merck's motion will be granted as to any such claim.

   b.     *Manufacturing Defect*

Merck next moves to dismiss any strict liability claim premised upon manufacturing defect, arguing that the Complaint's allegations are too threadbare to survive a motion to dismiss. (Doc. 7 at 11–13). To plead a strict liability manufacturing defect claim under California law, Plaintiff "must demonstrate that the relevant product deviated from the manufacturer's intended result or from other ostensibly identical units of the same product line in such a manner as to cause [her] injury." *Hill v. Davol Inc.*, 2016 WL 10988657, at *3 (C.D. Cal. Nov. 16, 2016)

3

1  (citations omitted). In another formulation of the standard, "[a] manufacturing defect exists when an item is produced in a substandard condition." *McCabe v. Am. Honda Motor Co.*, 100 Cal. App. 4th 1111, 1120 (2002). A "'manufacturing defect' theory posits that 'a suitable design is in place, but that the manufacturing process has in some way deviated from that design.'" *Schwartz v. Wright Med. Tech., Inc.*, No. EDCV1401615JGBSPX, 2014 WL 11320637, at *4 (C.D. Cal. Sept. 11, 2014) (citation omitted). In the context of a Rule 12(b)(6) motion to dismiss, to satisfy *Twombly* and *Iqbal*, a plaintiff "must identify/explain how the [product] either deviated from [the manufacturer's] intended result/design or how the [product] deviated from other seemingly identical [products]." *Dilley v. C.R. Bard, Inc.*, 2014 WL 1338877, at *3 (C.D. Cal. Apr. 3, 2014) (citation omitted). "A bare allegation that the [product] had 'a manufacturing defect' is an insufficient legal conclusion." *Id.*

Merck argues that Plaintiff has alleged nothing but bare conclusions here by asserting, "the Pneumovax 23 vaccine was defective in . . . manufacture . . . in that the vaccine lacked sufficient medical and health standards." (Doc. 7 at 13 (citing Compl., ¶ 31).) Merck contends "that Plaintiff does not [ ] claim that the Pneumovax she received deviated from the manufacturer's intended result, let alone provide factual allegations that explain *how* Pneumovax 23 purportedly deviated from Merck's intended design or from other identical doses of the vaccine. (*Id.*)

Plaintiff responds by pointing out, correctly, that the existence of a manufacturing defect can be proven through circumstantial evidence in a strict liability case. (Doc. 11 at 7 (citing cases)). Plaintiff also correctly points out that a "manufacturing or production defect is readily identifiable because a defective product is one that differs from the manufacturer's intended result or from other ostensibly identical units of the same product line." (*Id.* at 8 (citing cases, including *Barker v. Lull Eng'g*, 20 Cal. 3d 413, 429 (1978)).) Plaintiff points to three specific allegations in her Complaint, contending that they satisfy her pleading burden. The Court examines each in turn.

First, Plaintiff points to paragraph 31 of the Complaint, contending that it alleges "[t]he Pneumovax vaccine was in the same or similar condition as it was when it left Defendant's

4

manufacturing facility." (Compl., ¶ 31.) Although the Court is supposed to read a Complaint liberally and interpret it in the light most favorable to Plaintiff, that is not a plausible interpretation of paragraph 31, which reads:

> At all times relevant herein, the PNEUMOVAX® 23 vaccine was defective in design, manufacture, materials selection, testing, and research at the time it left the possession of Defendant MERCK in that the vaccine lacked sufficient medical and health standards so that it caused Plaintiffs personal injuries.

This language does not address the condition of the vaccine at time of administration or whether it was in the same or similar condition as it was when it left the manufacturing facility. In addition, it contains nothing but conclusory allegations regarding potential problems with "design, manufacture, materials selection, testing, and research."

Next, and somewhat more compellingly, Plaintiff points to paragraph 32, which alleges:

> It was foreseeable by Defendant MERCK that the product would be used without inspection or testing for defects by the users of said product and that the users were unaware, on or prior to April 3, 2018, of the dangerous risks of using Defendant MERCK's product.

This language, particularly the phrase about it being foreseeable that the product would be used "without inspection or defects" plausibly references a possible manufacturing defect. But this is still an entirely conclusory allegation devoid of any "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678

Finally, Plaintiff points to paragraph 33 which alleges:

> On or about April 3, 2018, the PNEUMOVAX® 23 vaccine was being used in a foreseeable manner by Plaintiff TERESA GARCIA for the purpose for which it was intended, and the dosage as recommended by Defendant MERCK.

This language does not move the needle. There are no <u>facts</u> alleged that suggest—either directly or circumstantially—that the vaccine administered to Plaintiff "deviated from the manufacturer's intended result or from other ostensibly identical units of the same product line"; that it was "produced in a substandard condition"; or that it "differ[ed] from the manufacturer's intended result or from other ostensibly identical units of the same product line."

Plaintiff argues in opposition that such a conclusion would mean that "the only way Plaintiff could sufficiently allege a manufacturing defect would be to pinpoint specifically where in the manufacturing process the alleged defect occurred." (Doc. 11 at 9.) In support of that argument, Plaintiff cites *Waldo v. Eli Lilly & Co.*, No. CIV. S-13-0789 LKK, 2013 WL 5554623, at *3 (E.D. Cal. Oct. 8, 2013). In that case, the complaint "set forth a factual proposition—that the drug was not made in accordance with [the manufacturer's] specifications." *Id*. The court held that to require the plaintiff to "identify at the pleadings stage, the defect in a pharmaceutical she ingested more than a decade ago would be to effectively absolve [the manufacturer] of any potential liability at the pleadings stage." *Id*. "Absent publicly-available information that [the defendant] manufactured defective [drugs] during the relevant time period, there is no reasonable way that [the plaintiff] could obtain sufficient information, pre-discovery, to identify or explain the nature of the alleged defect." *Id*. Even assuming this Court were to find *Waldo*'s reasoning more compelling than cases that require a plaintiff to identify in some way how the product deviated from the manufacturer's intended result or from seemingly identical products, *see, e.g., Lucas v. City of Visalia*, 726 F. Supp. 2d 1149, 1155 (E.D. Cal. 2010), the present Complaint does not even satisfy *Waldo*'s low bar. Here, there is not even a factual allegation that can reasonably read to suggest that the administered Pneumovax 23 dose was not properly manufactured. Merck's motion will be granted as to any strict liability manufacturing defect claim.

        c.    *Failure to Test*

As mentioned, the Complaint alleges that the Pneumovax 23 vaccine was "defective in design, manufacture, materials selection, *testing*, and research at the time it left the possession of Defendant MERCK in that the vaccine lacked sufficient medical and health standards so that it caused Plaintiffs personal injuries." (Comp., ¶ 31.) To the extent Plaintiff intends to premise a strict liability claim on "failure to test," Merck moves to dismiss any such claim on the ground that California does not recognize an independent claim of that nature. (Doc. 7 at 15.) In response, Plaintiff indicates that she is not attempting to allege an independent "failure to test" claim. (Doc. 11 at 10.) Therefore, Merck's motion will be denied as moot on this issue.

///

2. <u>Strict Liability Premised on Failure to Warn</u>

Merck next moves to dismiss Plaintiff's claim for strict liability based on failure to warn (sixth cause of action). (Doc. 7 at 16–19.) In addition to manufacturing defects and design defects, California also recognizes "warning defects" as a type of product defect. *See Webb v. Special Electric Co. Inc*., 63 Cal. 4th 167, 180-81 (2016). Generally, warning defects occur in a product that is dangerous "because it lacks adequate warnings or instructions." *Id*. Manufacturers are strictly liable for injuries caused by their failure to provide adequate warnings of "known or reasonably scientifically knowable risks" at the time they manufactured and distributed their product. *Marroquin v. Pfizer, Inc*., 367 F. Supp. 3d 1152, 1160–61 (E.D. Cal. 2019) (citing *Johnson v. American Standard, Inc*., 43 Cal. 4th 56, 64 (2008); *Carlin v. Superior Ct*., 13 Cal. 4th 1104, 1108-09, 1112 (1996)). "A plausible claim for a failure to warn should include allegations that *inter alia* identify which danger was not warned against, explain that the danger was substantial, and that the danger was known or reasonably knowable, or explain how any warning that was given was inadequate." *Id*.

Plaintiff suggests that the pleading standard is not this specific, citing to *Carlin*, 13 Cal. 4th at 1112. In that case, the California Supreme Court was called upon to decide whether to extend to prescription drug manufacturers its decision in *Anderson v. Owens–Corning Fiberglas Corp*., 53 Cal. 3d 987 (1991), which generally held that manufacturers are strictly liable for injuries caused by their failure to give warning of dangers that were known the scientific community at the time they manufactured and distributed their product. In ultimately ruling that strict liability for failure to warn claims could be brought against drug manufacturers, the California Supreme Court explained in general terms the difference between strict liability-based and negligence-based failure to warn claims:

> [F]ailure to warn in strict liability differs markedly from failure to warn in the negligence context. Negligence law in a failure-to-warn case requires a plaintiff to prove that a manufacturer or distributor did not warn of a particular risk for reasons which fell below the acceptable standard of care, i.e., what a reasonably prudent manufacturer would have known and warned about. Strict liability is not concerned with the standard of due care or the reasonableness of a manufacturer's conduct. *The rules of strict liability require a plaintiff to prove only that the defendant did not adequately warn of*

7

> *a particular risk that was known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of manufacture and distribution.* Thus, in strict liability, as opposed to negligence, the reasonableness of the defendant's failure to warn is immaterial.

*Id*. at 1112 (emphasis added). Plaintiff pulls the emphasized text out of context and attempts to convert it into a pleading standard that would apply in federal court. This is not persuasive. This passage in *Carlin* does not speak directly to any pleading standard, let alone the pleading standard applicable in federal court under *Twombly* and *Iqbal*. To the contrary, Defendants have pointed to persuasive authority, including *Marroquin*, 367 F. Supp. 3d at 1160–61, applying *Twombly* and *Iqbal* to strict liability failure to warn claims. Unsurprisingly, these federal cases stand for the proposition that a complaint must do more than regurgitate the legal standard.

The Complaint contains entirely generic allegations. (See Compl., ¶ 48 (The Pneumovax 23 vaccine "was defective in that Defendant MERCK and Does 51 through 100 . . . failed to adequately warn, instruct, label, advise or inform users of the [ ] vaccine, including Plaintiff TERESA GARCIA, of the known dangers of using the [ ] vaccine as recommended."); ¶ 49 ("The warnings that accompanied the sale of the [Pneumovax 23] vaccine, and the instructions issued thereto were defective, inappropriate and inadequate, in that they did not warn of the known dangers in the use of the [ ] vaccine.").) As currently pleaded, the Complaint fails to allege facts that even circumstantially reveal which danger was not warned against, how that danger was substantial, that the danger was known or reasonably knowable, or how any warning that was given was inadequate. Therefore, Merck's motion to dismiss the strict liability failure to warn claim will be granted.

**B.     Negligence**

Merck also moves to dismiss Plaintiff's negligence claims against Merck—the fourth cause of action for negligent product liability and eighth cause of action for general negligence—as insufficiently pleaded. (Doc. 7 at 19–23.) As Merck points out, allegations of negligent manufacturing, negligent design, and/or negligent failure to warn must advance some plausible factual basis for those claims:

> If a manufacturing defect is at issue, [the plaintiff] must explain

8

> how the [pharmaceutical] differed from Defendants' intended design or how it was different from other batches of [the pharmaceutical]. If a warning defect is at issue, [the plaintiff] must explain how the warning was inadequate, keeping in mind that the duty to warn runs to the physician . . . If a design defect is at issue, [the plaintiff] must identify what aspect of [the pharmaceutical] makes it defective. Without factual allegations that identify a product defect, and allege that the defect resulted from Defendants' negligence, no plausible claim is stated.

*Marroquin*, 367 F. Supp. 3d at 1164. Plaintiff once again contends that this level of specificity is not required, insisting that it is sufficient that the Complaint's language mirrors the elements of the various negligence claims Plaintiff advances. (Doc. 11 at 12–13.) Again, Plaintiff relies primarily on California cases,[1] but though those cases set forth the general elements of negligence, Plaintiff fails to acknowledge the relevant federal pleading standard.

Plaintiff's negligent product liability claim alleges generally that Merck "owed a duty of care to Plaintiff to design, manufacture, market, test, advertise, distribute and sell the Pneumovax 23 vaccine free of defects." (Compl., ¶ 40; *see also* Compl., ¶ 56 (Merck "had a duty to provide the public . . . with a Pneumovax 23 vaccine free from defects in design and/or manufacturer [sic]").) Plaintiff goes on to allege breach in general terms as well: Merck "breached their [sic] duty of care to Plaintiff in that Defendant negligently designed, manufactured, marketed, tested, advertised, distributed, and sold the Pneumovax 23 vaccine." (Compl., ¶ 41; *see also* Compl.,¶ 57 (Merck "breached their [sic] duty to Plaintiff in that Defendant designed, manufactured, marketed, promoted, tested[,] sold, and distributed the defective Pneumovax 23 vaccine . . . and failed to warn said persons, including Plaintiff, of the known defective and dangerous characteristics of the Pneumovax 23 vaccine.").)

The Court agrees with Merck that the Complaint fails to set forth factual allegations that would suggest Pneumovax 23 purportedly differed from Merck's intended design or other batches of the vaccine, thereby failing to properly allege a negligent manufacture claim. Similarly,

---

[1] The single federal case Plaintiff cites to resist dismissal of its negligence claims is *Michajlun v. Bausch & Lomb, Inc.*, No. 14-CV-1365 JM JMA, 2015 WL 1119733, at *9 (S.D. Cal. Mar. 11, 2015). The cited portion of that decision does not explain in any detail why that court concluded certain, non-preempted aspects of the negligence claims met federal pleadings standards. Nonetheless, it is noteworthy that the factual allegations in *Michajlun* were far more detailed than the instant Complaint. *See id*. *1–*3 (explaining in some detail why warnings provided were insufficient and/or did not reflect all that was known about the relevant risks).

9

1  because the Complaint fails to set forth facts that suggest what aspect of Pneumovax 23
2  purportedly makes it defective or how any such defect resulted from Merck's negligence, Plaintiff
3  has failed to properly allege a negligent design claim. Finally, Plaintiff fails to allege negligent
4  failure to warn because Plaintiff does not set forth facts that plausibly indicate how Merck's
5  warning about Pneumovax 23 was purportedly inadequate.

### C. Sanofi's Motion to Dismiss

As mentioned, Sanofi also argues that the claims against it should be dismissed as insufficiently pleaded. The reasons given by Sanofi are essentially the same as those given in Merck's motion, and Plaintiff's allegations against Sanofi are materially indistinguishable from those she advances against Merck. Therefore, the logic articulated above in relation to Merck's motion applies with equal force to Sanofi's motion as to the sufficiency of the claims. Accordingly, Sanofi's motion will be granted as to the first cause of action for strict products liability as to any such claim advanced on a design defect theory and/or manufacturing defect theory and will be denied as moot as to any failure to test theory. Sanofi's motion will also be granted as to the fifth cause of action for failure to warn, the third cause of action for negligent product liability, and the seventh cause of action for general negligence.

Sanofi also advances preemption as an alternative ground for dismissal of some, if not all, of the currently pleaded claims. The Vaccine Act established a "'no fault' national vaccine injury compensation program through which vaccine-injured persons might quickly and easily obtain damage awards from a 'Vaccine Court.'" *See Holmes v. Merck & Co.*, 697 F.3d 1080, 1082 (9th Cir. 2012) (quoting *Schafer v. Am. Cyanamid Co.*, 20 F.3d 1, 2 (1st Cir. 1994)). The availability of this streamlined system was coupled with limitations on available tort remedies applicable to those who chose to pursue a traditional litigation pathway:

> Section 22 of the Vaccine Act [ ] provides vaccine manufacturers "significant tort-liability protections," *Bruesewitz*, 131 S. Ct. at 1074, by eliminating liability for injuries from "unavoidable side effects," 42 U.S.C. § 300aa–22(b)(1); eliminating liability for not providing direct warnings to a claimant, § 300aa–22(c); and imposing a presumption that a manufacturer provided proper directions and warnings if the manufacturer complied with FDA requirements, § 300aa–22(b)(2). In this way, the Act sets up a quid pro quo: easier and more certain compensation in exchange for

> limited remedies within the traditional tort system. See, e.g., Bruesewitz, 131 S. Ct. at 1080 ("[T]he Act's structural quid pro quo leads to the same conclusion: The vaccine manufacturers fund from their sales an informal, efficient compensation program for vaccine injuries; in exchange they avoid costly tort litigation and the occasional disproportionate jury verdict.").

*Holmes*, 697 F.3d at 1083–84. Section 22 expressly preempts design-defect claims seeking compensation for injury or death caused by a vaccine's unavoidable side effects in § 300aa–22(b)(1), which provides:

> No vaccine manufacturer shall be liable in a civil action for damages arising from a vaccine-related injury or death associated with the administration of a vaccine after October 1, 1988, if the injury or death resulted from side effects that were unavoidable even though the vaccine was properly prepared and was accompanied by proper directions and warnings.

For purposes of this form of preemption, a vaccine is generally presumed to have been accompanied by proper directions and warnings "if the vaccine manufacturer shows that it complied in all material respects with all requirements under the Federal Food, Drug, and Cosmetic Act and section 262 of [the Vaccine Act] (including regulations issued under such provisions) applicable to the vaccine and related to vaccine-related injury or death for which the civil action was brought." § 300aa–22(b)(2). However, this presumption is subject to two exceptions: (a) where the manufacturer engaged in conduct that would subject it to punitive damages under the Vaccine Act (such as by the intentional and wrongful withholding information from regulators), or (b) where there is clear and convincing evidence that the manufacturer did not exercise due care. *Id*.

Sanofi's opening brief argued that Plaintiff's design defect allegations (which are injected into several causes of action) are barred by § 300aa-22(b) preemption. (Doc. 15-1 at 13–17.) As mentioned, Plaintiff agrees that her design defect claims should be dismissed, so there is no need for the Court to evaluate how the above form of preemption might bar those claims. Sanofi also argues that § 300aa-22(b) also bars Plaintiff's manufacturing defect claims, because those are "simply a repackaged version of the preempted design defect causes of action." (Doc. 15-1 at 18.) Sanofi argues that any manufacturing claim is "inextricably related" to and "cannot be separated

11

from" the defective design claim. (*Id.* (citing Compl., ¶ 24 (alleging "the Adacel® vaccine was defective in design, manufacture, materials selection, testing, and research at the time it left the possession of Defendant SANOFI in that the vaccine lacked sufficient medical and health standards so that it caused Plaintiffs personal injuries.").) Plaintiff maintains that her manufacturing defect claims are independent of any design defect claims in the Complaint. (Doc. 18 at 17.) In support of this assertion, Plaintiff again points to generic allegations that the vaccine was defectively manufactured but fails to provide any details to plausibly suggest how that might be so. As a result, the Court cannot tell whether and to what extent Plaintiff's manufacturing claim is truly independent of any design defect allegations. Application of the preemption provisions to any manufacturing defect claim will have to wait until a more detailed complaint is before the Court.

Section 22 separately "expressly preempts tort suits based 'solely' on the manufacturer's failure to provide direct warnings to the injured party. § 300aa–22(c)$^2$." *Holmes*, 697 F.3d at 1084. Sanofi argues that Plaintiff's failure to warn claim as currently pleaded is preempted by § 300aa-22(c) because the complaint alleges only that the manufacturers failed to warn end users of the vaccine about potential dangers. (Doc. 15-1 at 17 (citing Compl. ¶ 44 (alleging manufacturer "failed to adequately warn, instruct, label, advise or inform **users** of Adacel® vaccine, **including Plaintiff TERESA GARCIA**, of the known dangers of using the Adacel® vaccine as recommended") (emphasis added))). In response to this motion, Plaintiff cites the exceptions to § 300aa-22(b) preemption and argues that the Complaint sets forth allegations that Defendant failed to exercise due care in warning Plaintiff of the dangers of using the Adacel vaccine as recommended.

The Court notes that it is not entirely clear whether the exceptions contained in § 300aa-22(b) apply only to that subsection or also to § 300aa-22(c). On its face, the exceptions appear to only apply to § 300aa-22(b) and therefore that in § 300aa-22(c) the statute entirely preempts

---

[2] 42 U.S.C. § 300aa-22(c) provides in full: "No vaccine manufacturer shall be liable in a civil action for damages arising from a vaccine-related injury or death associated with the administration of a vaccine after October 1, 1988, solely due to the manufacturer's failure to provide direct warnings to the injured party (or the injured party's legal representative) of the potential dangers resulting from the administration of the vaccine manufactured by the manufacturer."

12

1  claims against vaccine manufacturers for failure to warn end users of the product. That is what
2  several pre-*Bruesewitz* cases indicate. *See Sykes v. Glaxo-SmithKline*, 484 F. Supp. 2d 289, 303–
3  04 (E.D. Pa. 2007) ("Section 300aa–22(c) expressly prohibits holding a vaccine manufacturer
4  liable because it failed to directly warn a vaccine recipient or his representative of any potential
5  danger from the vaccine," while "[a]s to claims that a manufacturer failed to adequately warn a
6  health care intermediary, Section 22(b)(2) establishes a legal presumption that vaccine warnings
7  are proper and sufficient" subject to the exceptions in § 300aa–22(b)(2)); *see also Blackmon v.*
8  *Am. Home Prod. Corp.*, 328 F. Supp. 2d 659, 666 (S.D. Tex. 2004) ("[T]he Vaccine Act clearly
9  bars claims based on a manufacturer's failure to provide warnings to the public or to
10  consumers."). But *Bruesewitz* muddied the waters on this issue by indicating that the exceptions
11  may apply to all forms of failure to warn claims. *See Bruesewitz*, 562 U.S. at 229 & n. 25
12  (referencing both 300aa-22(b)(2) and 300aa-22(c) before stating "The immunity does not apply if
13  the plaintiff establishes by clear and convincing evidence that the manufacturer was negligent, or
14  was guilty of fraud, intentional and wrongful withholding of information, or other unlawful
15  activity."). The Ninth Circuit acknowledged this holding in *Holmes v. Merck & Co.*, 697 F.3d
16  1080, 1085 (9th Cir. 2012).

17  The parties do not grapple with this quirk in the law in any detail. Fortunately, the Court
18  does not need to do so at this stage of the case either because, even assuming Plaintiff is correct
19  that a "due care" or similar exception does apply to claims premised upon a vaccine
20  manufacturer's failure to warn an end user/patient, the Complaint does not contain any non-
21  conclusory factual allegations suggesting an absence of due care. Once again, the portions of the
22  Complaint cited by Plaintiff are entirely conclusory. (Compl. ¶ 44 ("The Adacel® vaccine was
23  defective in that Defendant [] failed to adequately warn, instruct, label, advise or inform users of
24  Adacel® vaccine, including Plaintiff TERESA GARCIA, of the known dangers of using the
25  Adacel® vaccine as recommended."), ¶ 45 ("The warnings that accompanied the sale of the
26  Adacel® vaccine, and the instructions issued thereto were defective, inappropriate and
27  inadequate, in that they did not warn of the known dangers in the use of the Adacel® vaccine."),
28  ¶ 52 ("At all times herein mentioned, Defendant [], had a duty to provide the public, including

Plaintiff herein, with an Adacel® vaccine free from defects in design and/or manufacturer, and free from a risk of personal injury."); ¶ 53 ("Defendant SANOFI breached their duty to Plaintiff in that Defendant designed, manufactured, marketed, promoted, tested sold, and distributed the defective Adacel® vaccine to the public, including to Plaintiff TERESA GARCIA, and failed to warn said persons, including Plaintiff, of the known defective and dangerous characteristics of the Adacel® vaccine."). Therefore, Plaintiff's failure to warn claim will be dismissed on this alternative ground as well.

**D.      Leave to Amend**

Plaintiff has requested leave to amend. (Doc. 11 at 14; Doc. 18 at 26.) The Court finds that amendment consistent with the instructions provided herein would not be futile so dismissal will be with leave to amend.

## IV.      CONCLUSION AND ORDER

For the reasons set forth above:

(1)   Merck's motion to dismiss (Doc. 7) is **GRANTED IN PART AND DENIED AS MOOT IN PART** as set forth above.

(2)   Sanofi's motion to dismiss (Doc. 15) is **GRANTED IN PART AND DENIED AS MOOT IN PART** as set forth above.

(3)   Plaintiff may file an amended complaint within 45 days of the date of this order.

IT IS SO ORDERED.

Dated:   **July 28, 2022**

*[Signature]*
UNITED STATES DISTRICT JUDGE