Kristy M. Arevalo, State Bar No. 216308
**McCune·Wright·Arevalo, LLP**
3281 East Guasti Road, Suite 100
Ontario, California 91761
Telephone:  (909) 557-1250
Facsimile:  (909) 557-1275

Daniel R. Weltin, State Bar No. 226600
**THE LAW OFFICES OF DANIEL WELTIN, P.C.**
777 Davis Street, Suite 146
San Leandro, California 94577
Telephone: (510) 856-4421
Facsimile: (510) 856-3624

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERESA GARCIA,<br><br>    Plaintiff,<br><br>  v.<br><br>SANOFI PASTEUR INC., MERCK SHARP & DOHME CORP., and DOES 1 through 100, inclusive,<br><br>    Defendants. | Case No.:   1:20-cv-00850-JLT-EPG<br><br>Judge Assigned:   Hon. Jennifer L. Thurston<br>Complaint Filed:  September 12, 2022<br><br>**FIRST AMENDED COMPLAINT FOR MONEY DAMAGES**<br><br>(1) Negligent Product Liability<br>(2) Strict Product Liability – Failure to Warn<br>(3) Negligence |

COMES NOW, Plaintiff, TERESA GARCIA, and alleges as follows:

## I.

## GENERAL ALLEGATIONS

1.     The true names and capacities of Defendants named herein as DOES 1 through 100, inclusive, are unknown to Plaintiff who therefore sues said Defendants, and each of them by such fictitious names.  Plaintiff will amend this Complaint to show their true names and capacities when the same has been ascertained.  Plaintiff is informed and believes and based thereon alleges that each of said fictitiously named Defendants is negligently or otherwise legally responsible in some manner for the

1 occurrences herein alleged and that Plaintiff's damages as hereinafter alleged were proximately caused by said negligence or other acts.

2. Plaintiff is informed and thereupon alleges that at all times herein mentioned, Defendant SANOFI PASTEUR INC. (hereinafter "SANOFI") is a business entity with its headquarters in Swiftwater, Pennsylvania, and was and now is authorized to do and is doing business in the State of California.

3. Plaintiff is informed and thereupon alleges that at all times herein mentioned, Defendant MERCK SHARP & DOHME CORP. (hereinafter "MERCK") is a business entity with its headquarters in Kenilworth, Pennsylvania, and was and now is authorized to do and is doing business in the State of California.

4. Plaintiff is informed and thereupon alleges that at all times herein mentioned, Defendants Does 1 through 50 were the agents, servants, franchisers, franchisees, wholesalers, distributors, dealerships and employees of Defendant SANOFI PASTEUR INC., and were at all times acting within the course and scope of said agency, service, franchise, distribution, dealership and employment in the State of California.

5. Plaintiff is informed and thereupon alleges that at all times herein mentioned, Defendants Does 51 through 100 were the agents, servants, franchisers, franchisees, wholesalers, distributors, dealerships and employees of Defendant MERCK, and were at all times acting within the course and scope of said agency, service, franchise, distribution, dealership and employment in the State of California.

6. At all times herein mentioned, Plaintiff TERESA GARCIA, was and is a resident of the County of Stanislaus, State of California.

7. At all times relevant to this Complaint, Defendant SANOFI was and currently is the distributor of Adacel®, a TDaP, (Tetanus, Diphtheria, Pertussis) vaccination. Defendant SANOFI manufactures and distributes Adacel® within the United States, including the vaccination that was delivered to Plaintiff TERESA GARCIA.

8. At all times relevant to this Complaint, Defendant MERCK was and currently is the distributor of PNEUMOVAX® 23, a vaccine indicated for active immunization for the prevention of

pneumococcal disease caused by the 23 serotypes contained in the vaccine. Defendant MERCK manufactures and distributes PNEUMOVAX® 23 within the United States, including the vaccination that was delivered to Plaintiff TERESA GARCIA.

## II.

## FACTUAL BACKGROUND

9. On or about April 3, 2018, Plaintiff visited Family First Medical Care in Modesto, California to establish care with provider Silvia Diego, MD (hereinafter "Dr. Diego"). During this visit, Plaintiff received two vaccinations in her right shoulder, Adacel®, Lot Number: C5446AA, and PNEUMOVAX® 23, Lot Number: n005597 (hereinafter "Vaccinations").

10. On or about April 4, 2018, less than 48 hours after receiving her Vaccinations, Plaintiff returned to Family First Medical Care with right shoulder pain. Plaintiff stated that she had pain at the injection site where the Vaccinations were administered. Plaintiff's shoulder pain was so substantial that she was unable to move her hand and arm. Dr. Diego's plan of care for Plaintiff included taking Ibuprofen and icing her arm for the next 48 hours and advising Plaintiff to stay home for 24 to 48 hours and not go to work.

11. On or about, April 9, 2018, Plaintiff again returned to Dr. Diego at Family First Medical Care because her right shoulder pain had not diminished. Plaintiff stated that the pain in her right shoulder was constant and that she was able to obtain some relief from Ibuprofen, but that the pain was still an 8 on a scale of 1-10 and that her right arm was burning and throbbing. Dr. Diego advised Plaintiff to avoid lifting with the affected arm and to put ice or a cold pack on the sore joint for 10 to 20 minutes at a time every 1 to 2 hours for the next 3 days or until the swelling went down. Further, Dr. Diego ordered an MRI of Plaintiff's right shoulder, which was completed on April 18, 2019.

12. On or about, April 19, 2018, Plaintiff again visited Dr. Diego at Family First Medical Care to follow-up on her right shoulder pain. Plaintiff had then regained some range of motion in her shoulder but was still not able to raise her arm above her head. During this visit, Dr. Diego extended Plaintiff's disability until June 19, 2018.

13. On or about, May 31, 2018, Plaintiff established care with Eric Giang, D.O. (hereinafter "Dr. Giang") at Ortho-Pod Practice for an evaluation of her MRI as well as a diagnosis of her shoulder

1  pain. Dr. Giang informed Plaintiff that she had a partial tear of her right rotator cuff and what he
2  referred to as "frozen shoulder."
3      14.   Prior to April 3, 2018, Plaintiff TERESA GARCIA was not suffering from any shoulder
4  pain or injury on the date that she received the Vaccinations.
5      15.   Plaintiff continues to suffer residual effects and complications from her injuries.
6      16.   Plaintiff could not work from April 4, 2018, until February 28, 2019, due to the residual
7  effects and complications from the injuries resulting from the Vaccinations.
8      17.   On or about August 21, 2019, Plaintiff TERESA GARCIA filed an action for
9  compensation in the Court of Federal Claims, entitled *Garcia v. Secretary of Health and Human*
10 *Services*.
11     18.   Pursuant to 42 U.S.C. section 300aa-21(b)(1), a petitioner in the Court of Federal Claims
12 may opt to withdraw her petition from the National Vaccine Injury Compensation Program and pursue a
13 civil action in State Court if the petitioner's claim is not prosecuted within 240 days.
14     19.   On May 6, 2020, TERESA GARCIA filed a motion to withdraw in the Court of Federal
15 Claims to file a civil action for damages pursuant to 42 U.S.C. section 300aa-11(2)(A)(ii), which
16 provides that a person may bring a civil action for damages in a State court for damages arising from a
17 vaccine-related injury after a petition has been filed under the Program and the petitioner elects to
18 withdraw such petition under section 300aa-21(b).
19     20.   On May 18, 2020, the Court of Federal Claims dismissed TERESA GARCIA's petition
20 in the Court of Federal Claims pursuant to Plaintiff's election under 42 U.S.C. section 300aa-
21 11(2)(A)(ii), thereby constituting TERESA GARCIA's completion of the Vaccine Injury Compensation
22 Program.

### III.

### FIRST CAUSE OF ACTION

### (Negligent Product Liability)

### (By Plaintiff Against Defendant SANOFI and Does 1 through 50)

27     21.   Plaintiff incorporates by reference as if fully set forth herein, each and every allegation
28 set forth in the preceding paragraphs and further alleges as follows.

4

COMPLAINT FOR MONEY DAMAGES

22. Defendant SANOFI and Does 1 through 50 had a duty to exercise reasonable care to all foreseeable plaintiffs in the manufacture and distribution of the Adacel® vaccine. Specifically, Defendant SANOFI had a duty to warn health care providers and vaccine recipients about the potential side effects that may be caused by the vaccine.

23. The standard of care that Defendant SANOFI and Does 1 through 50 owed to these foreseeable plaintiffs is that of a reasonably prudent vaccine manufacturer and distributor.

24. Defendant SANOFI and Does 1 through 50 breached their duty of reasonable care to Plaintiff TERESA GARCIA, a foreseeable plaintiff as a recipient of the Adacel® vaccine, by manufacturing and distributing the Adacel® vaccine with inadequate warnings pertaining to its potential side effects such that an ordinary and average vaccine recipient would be unaware of the true dangers or risks of harm associated with its administration.

25. To ensure health care providers and vaccine recipients are properly informed about the risks and potential side effects of a vaccine, three different documents circulate during the vaccine administration process. First, when the vaccine arrives to a health care provider, it is accompanied by the manufacturer's package insert. The health care provider/vaccine administrator reviews the package insert for information about how to administer the vaccine and any warnings, precautions, or adverse reactions that have been discovered in clinical trials.[1] The health care provider/vaccine administrator passes on this information to the vaccine recipient. Here, the disclosed adverse reactions to the Adacel® vaccine in the package insert include pain and swelling at the injection site for up to two weeks and, in extreme cases, nerve compression.[2] Second is the manufacturer's patient information sheet, which is reviewed by the vaccine recipient prior to vaccine administration, providing him or her with background

---

[1] *See* Sanofi Pasteur, *Full Prescribing Information*, http://wayback.archive-it.org/7993/20170723151948/https://www.fda.gov/downloads/BiologicsBloodVaccines/Vaccines/ApprovedProducts/UCM142764.pdf (last visited Sept. 9, 2020).

[2] *See id.*

COMPLAINT FOR MONEY DAMAGES

about the vaccine and its potential side effects.[3] Here, the possible side effects listed in the patient information sheet for the Adacel® vaccine include pain, headaches, body aches, tiredness, and fevers.[4] Third is the vaccine information sheet ("VIS"), which is curated by the Centers for Disease Control and Prevention ("CDC") and reviewed by the vaccine recipient prior to vaccine administration for background information about the vaccine and its potential side effects.[5] Although the manufacturer is not directly involved in its vaccine's VIS, it indirectly impacts it because, in curating a vaccine's VIS, the CDC relies on, among other things, the manufacturer's labeling or package insert information.[6] Here, the disclosed risks in the VIS for the Adacel® vaccine include pain and swelling at the injection site and, rarely, difficulty moving the injected arm.[7]

26. After Plaintiff TERESA GARCIA was administered the Adacel® vaccine in 2018, she suffered chronic and debilitating shoulder pain at the injection site, was diagnosed with "frozen shoulder" and a partially torn rotator cuff and could not participate in even minor physical activity for years. None of Defendants' disclosures warned Plaintiff or her health care provider/vaccine administrator about the symptoms she continues to suffer.

---

[3] *See* Sanofi Pasteur, *Patient Information Sheet*, http://wayback.archive it.org/7993/20170723151950/https://www.fda.gov/downloads/BiologicsBloodVaccines/Vaccines/ApprovedProducts/UCM243729.pdf (last visited Sept. 9, 2020).

[4] *See id.*

[5] *See* CDC, *Vaccine Information Sheet* (Feb. 24, 2015), https://www.northfieldhospital.org/sites/default/files/Tdap%20Vaccine%20Information%20Sheet.pdf.

[6] *See* CDC, *Role of the Advisory Committee on Immunization Practices in CDC's Vaccine Recommendations*, https://www.cdc.gov/vaccines/acip/committee/role-vaccine-recommendations.html#:~:text=ACIP%20develops%20vaccine%20recommendations%20for,doses%2C%20and%20precautions%20and%20contraindications (Oct. 8, 2020).

[7] *See* CDC, *Vaccine Information Sheet* (Feb. 24, 2015), https://www.northfieldhospital.org/sites/default/files/Tdap%20Vaccine%20Information%20Sheet.pdf.

COMPLAINT FOR MONEY DAMAGES

27. Defendant SANOFI and Does 1 through 50 knew or reasonably should have known that the Adacel® vaccine could cause Plaintiff TERESA GARCIA's injuries. The Plaintiff's personal injuries are typical for a vaccine recipient suffering from SIRVA, or shoulder injuries related to vaccine administration.[8] Indeed, even a cursory investigation into lawsuits filed against the Adacel® vaccine would uncover previous claims.[9] In particular, SIRVA claims against Tdap, the generic name for the Adacel® vaccine, were filed years before the Plaintiff was administered the Adacel® vaccine, and they continue to be filed today.[10] Had Defendant SANOFI and Does 1 through 50 adequately warned Plaintiff TERESA GARCIA and/or her health care provider/vaccine administrator about the true dangers or risks of harm associated with the Adacel® vaccine prior to its administration, including chronic and debilitating shoulder pain at the injection site, frozen shoulder, a partially torn rotator cuff, and an inability to participate in even minor physical activity throughout this period, Plaintiff would not have consented to receiving the Adacel® vaccine. As a direct and proximate result of Defendant SANOFI and Does 1 through 50's failure to provide adequate warnings associated with the administration of the Adacel® vaccine, Plaintiff TERESA GARCIA suffered personal injuries and damages, including, but not limited to, past and future medical expenses, past and future loss of earnings, and pain and suffering.

///

///

---

[8] *See* Ashley Bancsi et al., *Shoulder injury related to vaccine administration and other injection site events*, NAT'L LIBR. OF MED. (Jan. 2019), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6347325/#:~:text=What%20is%20SIRVA%3F,landmarking%20for%20intramuscular%20deltoid%20injections.&text=Specifically%2C%20SIRVA%20occurs%20when%20an,administered%20into%20the%20shoulder%20joint.

[9] *See* IMMUNIZATIONINFO.COM, https://immunizationinfo.com/adacel-lawsuit/ (last visited Sept. 9, 2022).

[10] *See Vaccine Injury Case Awards*, MCTLAW, https://www.mctlaw.com/vaccine-injury/cases/ (last visited Sept. 9, 2022).

IV.

## SECOND CAUSE OF ACTION

### (Negligent Product Liability)

### (By Plaintiff Against Defendant MERCK and Does 51 through 100)

30. Plaintiff incorporates by reference as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

31. Defendant MERCK and Does 51 through 100 had a duty to exercise reasonable care to all foreseeable plaintiffs in the manufacture and distribution of PNEUMOVAX® 23. Specifically, Defendant MERCK had a duty to warn health care providers and vaccine recipients about the potential side effects that may be caused by the vaccine.

32. The standard of care that Defendant MERCK and Does 51 through 100 owed to these foreseeable plaintiffs is that of a reasonably prudent vaccine manufacturer and distributor.

33. Defendant MERCK and Does 51 through 100 breached their duty of reasonable care to Plaintiff TERESA GARCIA, a foreseeable plaintiff as a recipient of PNEUMOVAX® 23, by manufacturing and distributing PNEUMOVAX® 23 with inadequate warnings pertaining to its potential side effects such that an ordinary and average vaccine recipient would be unaware of the true dangers or risks of harm associated with its administration.

34. To ensure health care providers and vaccine recipients are properly informed about the risks and potential side effects of a vaccine, three different documents circulate during the vaccine administration process. First, when the vaccine arrives to a health care provider, it is accompanied by the manufacturer's package insert. The health care provider/vaccine administrator reviews the package insert for information about how to administer the vaccine and any warnings, precautions, or adverse reactions that have been discovered in clinical trials.[11] The health care provider/vaccine administrator

---

[11] *See* Merck Sharp & Dohme Corp., *Full Prescribing Information*, http://wayback.archive-it.org/7993/20170723151537/https://www.fda.gov/downloads/BiologicsBloodVaccines/Vaccines/ApprovedProducts/UCM257088.pdf (last visited Sept. 9, 2020).

COMPLAINT FOR MONEY DAMAGES

passes on this information to the vaccine recipient. Here, the disclosed adverse reactions to PNEUMOVAX® 23 in the package insert include pain and swelling at the injection site and, in extreme cases, heart failure.[12] Second is the manufacturer's patient information sheet, which is reviewed by the vaccine recipient prior to vaccine administration, providing him or her with background about the vaccine and its potential side effects.[13] Here, the possible side effects listed in the patient information sheet for PNEUMOVAX® 23 include pain, headaches, tiredness, wheezing, rashes, and hives.[14] Third is the VIS, which is curated by the CDC and reviewed by the vaccine recipient prior to vaccine administration for background information about the vaccine and its potential side effects.[15] Although the manufacturer is not directly involved in its vaccine's VIS, it indirectly impacts it because, in curating a vaccine's VIS, the CDC relies on, among other things, the manufacturer's labeling or package insert information.[16] Here, the disclosed risks in the VIS for PNEUMOVAX® 23 include pain and muscle aches at the injection site and, rarely, difficulty moving the injected arm.[17]

35. After Plaintiff TERESA GARCIA was administered PNEUMOVAX® 23 in 2018, she

---

[12] *See id.*

[13] *See* Merck Sharp & Dohme Corp., *Patient Information Sheet*, http://wayback.archive-it.org/7993/20170723151538/https://www.fda.gov/downloads/BiologicsBloodVaccines/Vaccines/ApprovedProducts/UCM277628.pdf (last visited Sept. 9, 2020).

[14] *See id.*

[15] *See* CDC, *Vaccine Information Sheet* (Apr. 24, 2015), https://www.fhckzoo.com/wp-content/uploads/2018/06/PPSV23-VIS.pdf.

[16] *See* CDC, *Role of the Advisory Committee on Immunization Practices in CDC's Vaccine Recommendations*, https://www.cdc.gov/vaccines/acip/committee/role-vaccine-recommendations.html#:~:text=ACIP%20develops%20vaccine%20recommendations%20for,doses%2C%20and%20precautions%20and%20contraindications. (Oct. 8, 2020).

[17] *See* CDC, *Vaccine Information Sheet* (Apr. 24, 2015), https://www.fhckzoo.com/wp-content/uploads/2018/06/PPSV23-VIS.pdf.

suffered chronic and debilitating shoulder pain at the injection site, was diagnosed with "frozen shoulder" and a partially torn rotator cuff and could not participate in even minor physical activity for years. None of Defendants' disclosures warned Plaintiff or her health care provider/vaccine administrator about the symptoms she continues to suffer.

36. Defendant MERCK and Does 51 through 100 knew or reasonably should have known that PNEUMOVAX® 23 could cause Plaintiff TERESA GARCIA's injuries. The Plaintiff's personal injuries are typical for a vaccine recipient suffering from SIRVA, or shoulder injuries related to vaccine administration.[18] Indeed, even a cursory investigation into lawsuits filed against PNEUMOVAX® 23 would uncover previous claims.[19] In particular, SIRVA claims against Pneumococcal, the generic name for PNEUMOVAX® 23, were filed years before Plaintiff was administered PNEUMOVAX® 23, and they continue to be filed today.[20]

37. Had Defendant MERCK and Does 51 through 100 adequately warned Plaintiff TERESA GARCIA and/or her health care provider/vaccine administrator about the true dangers or risks of harm associated with PNEUMOVAX® 23 prior to its administration, including chronic and debilitating shoulder pain at the injection site, frozen shoulder, a partially torn rotator cuff, and an inability to participate in even minor physical activity throughout this period, Plaintiff would not have consented to receiving PNEUMOVAX® 23.

---

[18] *See* Ashley Bancsi et al., *Shoulder injury related to vaccine administration and other injection site events*, NAT'L LIBR. OF MED. (Jan. 2019), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6347325/#:~:text=What%20is%20SIRVA%3F,landmarking%20for%20intramuscular%20deltoid%20injections.&text=Specifically%2C%20SIRVA%20occurs%20when%20an,administered%20into%20the%20shoulder%20joint.

[19] *See* IMMUNIZATIONINFO.COM, https://immunizationinfo.com/pneumococcal-vaccine-lawsuit/ (last visited Sept. 9, 2022).

[20] *See Vaccine Injury Case Awards*, MCTLAW, https://www.mctlaw.com/vaccine-injury/cases/ (last visited Sept. 9, 2022).

38. As a direct and proximate result of Defendant MERCK and Does 51 through 100's failure to provide adequate warnings associated with the administration of PNEUMOVAX® 23, Plaintiff TERESA GARCIA suffered personal injuries and damages, including, but not limited to, past and future medical expenses, past and future loss of earnings, and pain and suffering.

V.

**THIRD CAUSE OF ACTION**

**(Strict Product Liability – Failure to Warn)**

**(By Plaintiff Against Defendant SANOFI and Does 1 through 50)**

39. Plaintiff incorporates by reference as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

40. Defendant SANOFI commercially manufactured, distributed, and otherwise released into the stream of commerce the Adacel® vaccine and therefore had a duty to warn the public about the risks associated with its use.

41. Defendant SANOFI and Does 1 through 50 failed to warn health care professionals and the public, including Plaintiff herein and her health care provider and vaccine administrator, of the true risks of the Adacel® vaccine, including that it may subject the recipient to chronic and debilitating shoulder pain at the injection site, result in a diagnosis of "frozen shoulder" and a partially torn rotator cuff, and prevent even minor physical activity for years.

42. The danger Defendant SANOFI and Does 1 through 50 failed to warn about was material. After receiving the Adacel® vaccine, Plaintiff TERESA GARCIA suffered immediate personal injury. Within 48 hours, Plaintiff visited Family First Medical Care because she was experiencing severe shoulder pain at the injection site and unable to move her injected arm. Within a few weeks, she was diagnosed with frozen shoulder and a partially torn rotator cuff. Plaintiff was no longer able to work because of the pain and limited range of movement in her shoulder and, for the next three years, visited numerous health care providers and physical therapists to remedy her injuries, culminating in an operation to surgically repair her partially torn rotator cuff at the end of 2020. Despite all this, Plaintiff TERESA GARCIA still experiences pain at the injection site.

43. The Defendant SANOFI and Does 1 through 50 knew or reasonably should have known

that the Adacel® vaccine could cause these side effects. Plaintiff TERESA GARCIA's personal injuries are typical of a vaccine recipient suffering from SIRVA, or shoulder injuries related to vaccine administration.[21] Indeed, even a cursory investigation into lawsuits filed against the Adacel® vaccine would uncover previous claims.[22] SIRVA claims against Tdap, the generic name for the Adacel® vaccine, had existed years before Plaintiff was administered the Adacel® vaccine and still exist today.[23]

44. Defendant SANOFI and Does 1 through 50 failed to timely and reasonably warn about the Adacel® vaccine. The package insert accompanying the Adacel® vaccine and reviewed by the health care provider/vaccine administrator fails to disclose the side effects suffered by Plaintiff, instead vaguely addressing general pain and swelling at the injection site and, in rare instances, nerve compression.[24] The patient information sheet provided to the vaccine recipient merely addresses temporary pain, headaches, body aches, tiredness, and fevers.[25] Although the VIS provides some

---

[21] *See* Ashley Bancsi et al., *Shoulder injury related to vaccine administration and other injection site events*, NAT'L LIBR. OF MED. (Jan. 2019), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6347325/#:~:text=What%20is%20SIRVA%3F,landmarking%20for%20intramuscular%20deltoid%20injections.&text=Specifically%2C%20SIRVA%20occurs%20when%20an,administered%20into%20the%20shoulder%20joint.

[22] *See* IMMUNIZATIONINFO.COM, https://immunizationinfo.com/adacel-lawsuit/ (last visited Sept. 9, 2022).

[23] *See Vaccine Injury Case Awards*, MCTLAW, https://www.mctlaw.com/vaccine-injury/cases/ (last visited Sept. 9, 2022).

[24] *See* Sanofi Pasteur, *Full Prescribing Information*, http://wayback.archive-it.org/7993/20170723151948/https://www.fda.gov/downloads/BiologicsBloodVaccines/Vaccines/ApprovedProducts/UCM142764.pdf (last visited Sept. 9, 2020).

[25] *See* Sanofi Pasteur, *Patient Information Sheet*, http://wayback.archive-it.org/7993/20170723151950/https://www.fda.gov/downloads/BiologicsBloodVaccines/Vaccines/ApprovedProducts/UCM243729.pdf (last visited Sept. 9, 2020).

COMPLAINT FOR MONEY DAMAGES

information related to Plaintiff's injuries, it, too, is inadequate. The VIS merely discloses that a rare side effect of vaccines, including the Adacel® vaccine, is severe shoulder pain and difficulty moving the injected arm.[26] Although this warning touches the surface of Plaintiff's side effects, it is inadequate because it fails to address Plaintiff's specific injuries or how long the injury could potentially last (years in duration).

45. As a direct and proximate result of Defendants' failure to timely and reasonably warn of the safety of the Adacel® vaccine, Plaintiff TERESA GARCIA suffered personal injuries and damages, including, but not limited to, past and future medical expenses, past and future loss of earnings, and pain and suffering.

## VI.

## FOURTH CAUSE OF ACTION

### (Strict Product Liability – Failure to Warn)

### (By Plaintiff Against Defendant MERCK and Does 51 through 100)

46. Plaintiff incorporates by reference as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

47. Defendant MERCK commercially manufactured, distributed, and otherwise released into the stream of commerce the PNEUMOVAX® 23 vaccine and therefore had a duty to warn the public about the risks associated with its use.

48. Defendant MERCK and Does 51 through 100 failed to warn health care professionals and the public, including Plaintiff herein and her health care provider and vaccine administrator, of the true risks of PNEUMOVAX® 23, including that it may subject the recipient to chronic and debilitating shoulder pain at the injection site, result in a diagnosis of "frozen shoulder" and a partially torn rotator cuff, and prevent even minor physical activity for years.

49. The danger Defendant MERCK and Does 51 through 100 failed to warn about was

---

[26] *See* CDC, *Vaccine Information Sheet* (Feb. 24, 2015), https://www.northfieldhospital.org/sites/default/files/Tdap%20Vaccine%20Information%20Sheet.pdf.

material. After receiving PNEUMOVAX® 23, Plaintiff TERESA GARCIA suffered immediate personal injury. Within 48 hours, Plaintiff visited Family First Medical Care because she was experiencing severe shoulder pain at the injection site and unable to move her injected arm. Within a few weeks, she was diagnosed with frozen shoulder and a partially torn rotator cuff. Plaintiff was no longer able to work because of the pain and limited range of movement in her shoulder and, for the next three years, visited numerous health care providers and physical therapists to remedy her injuries, culminating in an operation to surgically repair her partially torn rotator cuff at the end of 2020. Despite all this, Plaintiff TERESA GARCIA still experiences pain at the injection site.

50. The Defendant MERCK and Does 51 through 100 knew or reasonably should have known that PNEUMOVAX® 23 could cause these side effects. Plaintiff TERESA GARCIA's personal injuries are typical of a vaccine recipient suffering from SIRVA, or shoulder injuries related to vaccine administration.[27] Indeed, even a cursory investigation into lawsuits filed against PNEUMOVAX® 23 would uncover previous claims.[28] SIRVA claims against Pneumococcal, the generic name for PNEUMOVAX® 23, had existed years before Plaintiff was administered PNEUMOVAX® 23 and still exist today.[29]

51. Defendant MERCK and Does 51 through 100 failed to timely and reasonably warn about PNEUMOVAX® 23. The package insert accompanying PNEUMOVAX® 23 and reviewed by the

---

[27] *See* Ashley Bancsi et al., *Shoulder injury related to vaccine administration and other injection site events*, NAT'L LIBR. OF MED. (Jan. 2019), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6347325/#:~:text=What%20is%20SIRVA%3F,landmarking%20for%20intramuscular%20deltoid%20injections.&text=Specifically%2C%20SIRVA%20occurs%20when%20an,administered%20into%20the%20shoulder%20joint.

[28] *See* IMMUNIZATIONINFO.COM, https://immunizationinfo.com/pneumococcal-vaccine-lawsuit/ (last visited Sept. 9, 2022).

[29] *See Vaccine Injury Case Awards*, MCTLAW, https://www.mctlaw.com/vaccine-injury/cases/ (last visited Sept. 9, 2022).

health care provider/vaccine administrator fails to disclose the side effects suffered by Plaintiff, instead vaguely addressing general pain and swelling at the injection site and, in rare instances, heart failure.[30] The patient information sheet provided to the vaccine recipient merely addresses temporary pain, headaches, tiredness, wheezing, rashes, and hives.[31] Although the VIS provided some information related to Plaintiff's injuries, it, too, is inadequate. The VIS merely discloses that a rare side effect of vaccines, including PNEUMOVAX® 23, is severe shoulder pain and difficulty moving the injected arm.[32] Although this warning touches the surface of Plaintiff's side effects, it is inadequate because it fails to address Plaintiff's specific injuries or how long the injury could potentially last (years in duration).

52. As a direct and proximate result of Defendants' failure to timely and reasonably warn of the safety of PNEUMOVAX® 23, Plaintiff TERESA GARCIA suffered personal injuries and damages, including, but not limited to, past and future medical expenses, past and future loss of earnings, and pain and suffering.

## VII.

## FIFTH CAUSE OF ACTION

### (General Negligence)

### (By Plaintiff Against Defendant SANOFI and Does 1 through 50)

53. Plaintiff incorporates by reference as if fully set forth herein, each and every allegation

---

[30] *See* Merck Sharp & Dohme Corp., *Full Prescribing Information*, http://wayback.archive-it.org/7993/20170723151537/https://www.fda.gov/downloads/BiologicsBloodVaccines/Vaccines/ApprovedProducts/UCM257088.pdf (last visited Sept. 9, 2020).

[31] *See* Merck Sharp & Dohme Corp., *Patient Information Sheet*, http://wayback.archive-it.org/7993/20170723151538/https://www.fda.gov/downloads/BiologicsBloodVaccines/Vaccines/ApprovedProducts/UCM277628.pdf (last visited Sept. 9, 2020).

[32] *See* CDC, *Vaccine Information Sheet* (Apr. 24, 2015), https://www.fhckzoo.com/wp-content/uploads/2018/06/PPSV23-VIS.pdf.

COMPLAINT FOR MONEY DAMAGES

set forth in the preceding paragraphs and further alleges as follows.

54. At all times herein mentioned, Defendant SANOFI and Does 1 through 50, and each of them, had a duty to provide the public, including Plaintiff herein, with an Adacel® vaccine free from defects, and free from a risk of personal injury.

55. Defendant SANOFI and Does 1 through 50 breached their duty to Plaintiff TERESA GARCIA in that Defendants manufactured and distributed the Adacel® vaccine to the public, including to Plaintiff, and failed to warn said persons, including Plaintiff and her health care provider and vaccine administrator, of the known potential side effects that may be caused by the Adacel® vaccine's use. None of Defendants' disclosures warned Plaintiff or her health care provider/vaccine administrator about the symptoms she suffered, including chronic and debilitating shoulder pain at the injection site, "frozen shoulder," a partially torn rotator cuff and an inability to participate in even minor physical activity for years.

56. As a direct and proximate result of the Defendants' negligence, Plaintiff TERESA GARCIA suffered personal injuries and damages, including, but not limited to, past and future medical expenses, past and future loss of earnings, and pain and suffering.

## VIII.

## SIXTH CAUSE OF ACTION

### (General Negligence)

### (By Plaintiff Against Defendant MERCK and Does 51 through 100)

57. Plaintiff incorporates by reference as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

58. At all times herein mention ed, Defendant MERCK and Does 51 through 100, and each of them, had a duty to provide the public, including Plaintiff herein, with a PNEUMOVAX® 23 vaccine free from defects, and free from a risk of personal injury.

59. Defendant MERCK and Does 51 through 100 breached their duty to Plaintiff TERESA GARCIA in that Defendants manufactured and distributed PNEUMOVAX® 23 vaccine to the public, including to Plaintiff, and failed to warn said persons, including Plaintiff and her health care provider and vaccine administrator, of the known potential side effects that may be caused by the

PNEUMOVAX® 23's use. None of Defendants' disclosures warned Plaintiff or her health care provider/vaccine administrator about the symptoms she suffered, including chronic and debilitating shoulder pain at the injection site, "frozen shoulder," a partially torn rotator cuff and an inability to participate in even minor physical activity for years.

60. As a direct and proximate result of the Defendants' negligence, Plaintiff TERESA GARCIA suffered personal injuries and damages, including, but not limited to, past and future medical expenses, past and future loss of earnings, and pain and suffering.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them as follows:

A. General damages in a sum according to proof;

B. For special damages, including past and future medical expenses;

C. Loss of income incurred and to be incurred according to proof;

D. For prejudgment interest to the extent allowed by law;

E. Costs of suit; and

F. For such other and further relief as the court deems proper.

Date: September 12, 2022                                            McCune·Wright·Arevalo, LLP

By: *Kristy M Arevalo*
Kristy M. Arevalo
*Attorney for Plaintiff*

COMPLAINT FOR MONEY DAMAGES