UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERESA GARCIA,<br><br>    Plaintiff,<br><br>    v.<br><br>SANOFI PASTEUR INC., et al.,<br><br>    Defendants. | No.  1:20-cv-00850-MCE-JDP<br><br>**MEMORANDUM AND ORDER** |

Plaintiff Teresa Garcia ("Plaintiff") initiated this personal injury lawsuit against Merck Sharp & Dohme Corp. ("Merck"), the manufacturer and distributer of the Pneumovax® 23 ("Pneumovax 23") pneumococcal disease vaccine, and Sanofi Pasteur Inc. ("Sanofi"), the manufacturer of the Adacel® ("Adacel") Tetanus, Diphtheria, Pertussis ("TDaP") vaccine, (collectively, "Defendants") for injuries sustained following her inoculation with both vaccines in April 2018.  After she initially filed this action in state Court, Merck removed it here and both Defendants filed motions to dismiss, which were granted with leave to amend.  ECF Nos. 7, 15, 17.  Plaintiff then filed a First Amended Complaint ("FAC"), ECF No. 30, after which Defendants filed a second round of Motions to Dismiss, which are presently before this Court, ECF Nos. 36, 38.[1]

---

[1] Due to the amendment of Eastern District of California Local Rule 120, this case was reassigned to the undersigned on September 13, 2023.

1

For the following reasons, those Motions are GRANTED with final leave to amend.[2]

## BACKGROUND[3]

On or about April 3, 2018, Plaintiff visited Family First Medical Care in Modesto, California, to establish care with provider Silvia Diego, MD (hereinafter "Dr. Diego"). During this visit, Plaintiff received two vaccinations in her right shoulder, Adacel®, Lot Number: C5446AA, and PNEUMOVAX® 23, Lot Number: n005597.  Less than 48 hours after receiving her vaccinations, Plaintiff returned to the clinic with right shoulder pain.[4] Plaintiff stated that she had pain at the injection site that was so substantial that she was unable to move her hand and arm.  Dr. Diego advised Plaintiff to take Ibuprofen, to ice her arm, and to stay home from work for the next 48 hours.

Plaintiff's pain did not diminish, however, and on, April 9, 2018, she again returned to see Dr. Diego.  According to Plaintiff, the pain in her right shoulder was constant and, while she was able to obtain some relief from the Ibuprofen, the pain was still an 8 on a scale of 1-10, with her right arm was burning and throbbing.  Dr. Diego advised Plaintiff to avoid lifting with the affected arm and to put ice or a cold pack on the sore joint for 10 to 20 minutes at a time every 1 to 2 hours for the next three days or until the swelling was alleviated.  Dr. Diego also ordered an MRI of Plaintiff's shoulder which occurred on April 18, 2018.

The following day, April 19, Plaintiff followed up with Dr. Diego.  By then Plaintiff had regained some range of motion in her shoulder, but she was still unable to raise her arm above her head.  Dr. Diego extended Plaintiff's disability through June 19, 2018.

///

---

[2] Because oral argument would not have been of material assistance, the Court declined to set a hearing date and decides this matter on the briefs.  E.D. Local Rule 230(g).

[3] The following facts are taken, primarily verbatim, from the FAC.

[4] Prior to receiving the vaccinations, Plaintiff had not suffered from any shoulder pain or injury.

1    In the meantime, on May 31, 2018, Plaintiff established care with Eric Giang, D.O. (hereinafter "Dr. Giang") at Ortho-Pod Practice for an evaluation of her MRI as well as a diagnosis of her shoulder pain. Dr. Giang informed Plaintiff that she had a partial tear of her right rotator cuff and what he referred to as "frozen shoulder." She was unable to return to work until February 28, 2019, due to her injuries, and she eventually underwent surgery at the end of 2020 to repair her shoulder. Plaintiff avers that had she been properly advised of the risks adherent to the vaccinations, she would not have consented to receive them.

To that end, Plaintiff alleges that to ensure health care providers and vaccine recipients are properly informed about the risks and potential side effects of a vaccine, three different documents circulate during the vaccine administration process. First, when the vaccine arrives to a health care provider, it is accompanied by the manufacturer's package insert. The health care provider/vaccine administrator reviews the package insert for information about how to administer the vaccine and any warnings, precautions, or adverse reactions that have been discovered in clinical trials. The health care provider/vaccine administrator passes on this information to the vaccine recipient. Here, the disclosed adverse reactions to the Adacel® vaccine in the package insert include pain and swelling at the injection site for up to two weeks and, in extreme cases, nerve compression. The disclosed adverse reactions to PNEUMOVAX® 23 in the package insert also include pain and swelling at the injection site and, in extreme cases, heart failure.

Second is the manufacturer's patient information sheet, which is reviewed by the vaccine recipient prior to vaccine administration, providing him or her with background about the vaccine and its potential side effects. Here, the possible side effects listed in the patient information sheet for the Adacel® vaccine include pain, headaches, body aches, tiredness, and fevers. The possible side effects listed for PNEUMOVAX® 23 include pain, headaches, tiredness, wheezing, rashes, and hives.

///

Third is the vaccination information sheet ("VIS"), which is curated by the Center for Disease Control and Prevention ("CDC") and reviewed by the vaccine recipient prior to vaccine administration for background information about the vaccine and its potential side effects. Although the manufacturer is not directly involved in its vaccine's VIS, it indirectly impacts its development because, in curating a vaccine's VIS, the CDC relies on, among other things, the manufacturer's labeling or package insert information. The disclosed risks in the VIS for the Adacel® vaccine include pain and swelling at the injection site and, rarely, difficulty moving the injected arm. Similarly, the disclosed risks in the VIS for PNEUMOVAX® 23 include pain and muscle aches at the injection site and also, again rarely, difficulty moving the injected arm.

According to Plaintiff, none of Defendants' disclosures warned her or her health care provider/vaccine administrator about the symptoms she continues to suffer, namely chronic and debilitating shoulder pain at the injection site, "frozen shoulder," and a partially torn rotator cuff. She further contends, however, that Defendants knew or reasonably should have known that the Adacel® and PNEUMOVAX® 23 vaccines could cause the very injuries from which Plaintiff now suffers. Indeed, Plaintiff avers, her personal injuries are typical for a vaccine recipient suffering from SIRVA, or shoulder injuries related to vaccine administration. SIRVA claims were filed against TDaP, the generic name for the Adacel® vaccine, and Pneumococcal, the generic name PNEUMOVAX® 23 for years before Plaintiff was administered the vaccines, and they continue to be filed today. Plaintiff emphasizes that had she and/or her health care provider/vaccine administrator been adequately warned about the true dangers or risks of the vaccines, she would not have consented to receiving either vaccination.

Accordingly, in August 2019, Plaintiff filed an action for compensation in the Court of Federal Claims, entitled <u>Garcia v. Secretary of Health and Human Services</u>.

///

///

///

Pursuant to 42 U.S.C. section 300aa-21(b)(1), a petitioner in the Court of Federal Claims may opt to withdraw her petition from the National Vaccine Injury Compensation Program and pursue a civil action in State Court if the petitioner's claim is not prosecuted within 240 days. On May 6, 2020, Plaintiff opted to do so, and the Court of Federal Claims thereafter dismissed her petition.

On May 22, 2020, Plaintiff filed the original Complaint in this action in Stanislaus County Superior Court. Her case was removed to this Court and now proceeds on her FAC, which alleges causes of action against both Defendants for: (1) negligent products liability; (2) strict product liability—failure to warn; and (3) general negligence.

**STANDARD**

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6),[5] all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337–38 (9th Cir. 1996). Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations. However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal citations and quotations omitted).

///
///
///

---

[5] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure.

A court is not required to accept as true a "legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")).

Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket assertion, of entitlement to relief." Twombly, 550 U.S. at 555 n.3 (internal citations and quotations omitted). Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing Wright & Miller, supra, at 94, 95). A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570. If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend. Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of [the] amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to be considered when deciding whether to grant leave to amend). Not all of these factors merit equal weight. Rather, "the consideration of prejudice to the opposing party . . . carries the greatest weight." Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 185 (9th Cir. 1987)).

6

1 Dismissal without leave to amend is proper only if it is clear that "the complement could not
2 be saved by any amendment." Intri-Plex Techs., Inc. v. Crest Group, Inc., 499 F.3d
3 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006, 1013 (9th Cir.
4 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave
5 need not be granted where the amendment of the complaint . . . constitutes an exercise
6 in futility . . . .")).

## ANALYSIS

Defendants move to dismiss Plaintiffs claims on largely the same basis as one another.  They contend:  (1) any claim based on a failure to warn Plaintiff or the public generally of certain side effects are barred by the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§300aa-1-33 ("Vaccine Act") and Bruesewitz v. Wyeth LLC, 131 S. Ct. 1068 (U.S. 2011);[6] (2) in any event, SIRVA is a well-known risk of which Defendants had no duty to warn; (3) nor did Defendants have a duty to warn Plaintiff's healthcare provider/vaccine administrator of the risks associated with improper vaccine administration; (4) Plaintiff has not alleged that disclosure of these risks would have changed her prescribing physician's decision to use the product as required by the "learned intermediary" doctrine; and (5) Plaintiff has not adequately alleged facts showing that her injuries were caused by either of Defendant's vaccines.  These arguments are well taken.

**A.     Plaintiff's claims against Sonifi are partially preempted.**

Prior to this case being reassigned to this Court, a sister court in this district already dismissed Plaintiff's failure to warn claims to the extent Plaintiff relies on a theory that Defendants were required to warn her or the general public of the risks she suffered here:

---

[6] This first argument is raised only by Sanofi.

7

Section 22 separately "expressly preempts tort suits based 'solely' on the manufacturer's failure to provide direct warnings to the injured party. § 300aa–22(c)[7]." Holmes, 697 F.3d at 1084. Sanofi argues that Plaintiff's failure to warn claim as currently pleaded is preempted by § 300aa-22(c) because the complaint alleges only that the manufacturers failed to warn end users of the vaccine about potential dangers. (Doc. 15-1 at 17 (citing Compl. ¶ 44 (alleging manufacturer "failed to adequately warn, instruct, label, advise or inform users of Adacel® vaccine, including Plaintiff TERESA GARCIA, of the known dangers of using the Adacel® vaccine as recommended") (emphasis added))). In response to this motion, Plaintiff cites the exceptions to § 300aa-22(b) preemption and argues that the Complaint sets forth allegations that Defendant failed to exercise due care in warning Plaintiff of the dangers of using the Adacel vaccine as recommended.

The Court notes that it is not entirely clear whether the exceptions contained in § 300aa-22(b) apply only to that subsection or also to § 300aa-22(c). On its face, the exceptions appear to only apply to § 300aa-22(b) and therefore that in § 300aa-22(c) the statute entirely preempts claims against vaccine manufacturers for failure to warn end users of the product. That is what several pre-Bruesewitz cases indicate. See Sykes v. Glaxo-SmithKline, 484 F. Supp. 2d 289, 303–04 (E.D. Pa. 2007) ("Section 300aa–22(c) expressly prohibits holding a vaccine manufacturer liable because it failed to directly warn a vaccine recipient or his representative of any potential danger from the vaccine," while "[a]s to claims that a manufacturer failed to adequately warn a health care intermediary, Section 22(b)(2) establishes a legal presumption that vaccine warnings are proper and sufficient" subject to the exceptions in § 300aa–22(b)(2)); see also Blackmon v. Am. Home Prod. Corp., 328 F. Supp. 2d 659, 666 (S.D. Tex. 2004) ("[T]he Vaccine Act clearly bars claims based on a manufacturer's failure to provide warnings to the public or to consumers."). But Bruesewitz muddied the waters on this issue by indicating that the exceptions may apply to all forms of failure to warn claims. See Bruesewitz, 562 U.S. at 229 & n.25 (referencing both 300aa-22(b)(2) and 300aa-22(c) before stating "The immunity does not apply if the plaintiff establishes by clear and convincing evidence that the manufacturer was negligent, or was guilty of fraud, intentional and wrongful withholding of information, or other unlawful activity."). The Ninth Circuit acknowledged this holding in Holmes v. Merck & Co., 697 F.3d 1080, 1085 (9th Cir. 2012).

///

---

[7] 42 U.S.C. § 300aa-22(c) provides in full: "No vaccine manufacturer shall be liable in a civil action for damages arising from a vaccine-related injury or death associated with the administration of a vaccine after October 1, 1988, solely due to the manufacturer's failure to provide direct warnings to the injured party (or the injured party's legal representative) of the potential dangers resulting from the administration of the vaccine manufactured by the manufacturer."

> The parties do not grapple with this quirk in the law in any detail. Fortunately, the Court does not need to do so at this stage of the case either because, even assuming Plaintiff is correct that a "due care" or similar exception does apply to claims premised upon a vaccine manufacturer's failure to warn an end user/patient, the Complaint does not contain any non-conclusory factual allegations suggesting an absence of due care. Once again, the portions of the Complaint cited by Plaintiff are entirely conclusory. (Compl. ¶ 44 ("The Adacel® vaccine was defective in that Defendant [] failed to adequately warn, instruct, label, advise or inform users of Adacel® vaccine, including Plaintiff TERESA GARCIA, of the known dangers of using the Adacel® vaccine as recommended."), ¶ 45 ("The warnings that accompanied the sale of the Adacel® vaccine, and the instructions issued thereto were defective, inappropriate and inadequate, in that they did not warn of the known dangers in the use of the Adacel® vaccine."), ¶ 52 ("At all times herein mentioned, Defendant [], had a duty to provide the public, including Plaintiff herein, with an Adacel® vaccine free from defects in design and/or manufacturer, and free from a risk of personal injury."); ¶ 53 ("Defendant SANOFI breached their duty to Plaintiff in that Defendant designed, manufactured, marketed, promoted, tested sold, and distributed the defective Adacel® vaccine to the public, including to Plaintiff TERESA GARCIA, and failed to warn said persons, including Plaintiff, of the known defective and dangerous characteristics of the Adacel® vaccine."). Therefore, Plaintiff's failure to warn claim will be dismissed on this alternative ground as well.

ECF No. 27 at 12-14.

Plaintiff does not dispute that her failure to warn claims are preempted insofar as she relies on the theory that Sinofi owed a duty to warn her or the general public regarding the side effects of Adacel®. She argues instead that her claims must survive because she also alleges that Sinofi failed to warn her medical provider. See Colbath v. Merck & Co., Inc., Case No.: 3:21-cv-120-W(DEB), 2022 WL 935195, at *4 (S.D. Cal.). However, Sinofi does not challenge these latter allegations through its instant argument. Accordingly, Sinofi's Motion is GRANTED to the extent Plaintiff's claims are based on Sinofi's failure to warn her and other end users such as the general public.

///
///
///
///

**B. To the extent Plaintiff's claims turn on the theory that Defendants owed a duty to warn her, other vaccine recipients, or the general public, they are also barred under the learned intermediary doctrine.**

"The learned intermediary doctrine provides that in the case of prescription drugs and medical devices, the duty to warn runs to the physician, not the patient." Oregon v. Boston Scientific Corp., No. 1:21-cv-01092-DAD-BAK, 2022 WL 1607960, at *3 (E.D. Cal.). This doctrine is equally applicable to vaccines. See Colbath, 2022 WL 935195, at *4. Accordingly, under California law Plaintiff's claims against both Defendants are subject to dismissal except to the extent Plaintiff alleges Defendants failed to properly warn her medical provider/vaccine administrator. Defendants' Motions are both GRANTED on this issue.

**C. Regardless, Plaintiff alleges her injuries were the result of SIRVA, a well-known risk of which Defendants have no duty to warn.**

"California law . . . recognizes the obvious danger rule, which provides that there is no need to warn of known risks under either a negligence or strict liability theory." Johnson v. American Standard, Inc., 43 Cal. 4th 56, 67 (2008). "A manufacturer is not liable to a sophisticated user of its product for failure to warn of a risk, harm, or danger, if the sophisticated user knew or should have known of that risk, harm, or danger." Id. at 71. Defendants point to Plaintiff's own allegations in the FAC, as well as judicially noticeable sources, to support the conclusion that SIRVA is a well-known risk in the medical community. Indeed, Plaintiff does not argue otherwise. Instead, contrary to the allegations in her FAC, Plaintiff contends now that she does not suffer from SIRVA, and she attempts to add new facts regarding her injury that have not been properly pled. Because her claims as currently couched allege that she suffered a well-known ailment associated with the improper administration of a vaccine, she has failed to allege that Defendants had a duty to independently warn her medical provider. Defendants' Motions are thus GRANTED on this ground as well.

///

///

### D. Finally, Plaintiff failed to allege the requisite causation to successfully plead her claims.

Plaintiff alleges in the FAC that she received two vaccines and that she subsequently suffered a shoulder injury. She failed to allege, however, that different warnings to her medical provider would have changed the prescribing decision. Roschkovan v. Bristol-Meyers Squibb Co., Case No.: ED CV 21-8590-FWS-AGR, 2022 WL 3012519, at * (C.D. Cal.) ("In order to prove causation, Plaintiff must allege that the inadequate warning or lack of warning about the medical device risk would have altered the prescribing physician's decision to use the product.") (citations and internal quotation marks omitted). Plaintiff has not alleged that any additional form of warnings would have altered her vaccine administrator's decision to use either vaccine. She has only alleged that Plaintiff herself would not have consented to be vaccinated, which is insufficient given the facts of this case.

Nor has Plaintiff alleged that the vaccines, as opposed to, for example, their improper administration, caused her injuries. The FAC does not set forth at all how either vaccine could have resulted in "frozen shoulder" or a partially torn rotator cuff. Instead, the FAC indicates that Plaintiff suffers from SIRVA, which Plaintiff does not dispute is the result of the improper administration of vaccines (e.g., injecting the vaccine into the wrong part of the upper body) as opposed to the vaccines themselves. In opposition, Plaintiff again tries to distance herself from the allegations in the FAC to argue that she has not been diagnosed with SIRVA and that additional medical diagnoses appear in her medical records. The Court cannot consider these additional facts that go beyond the pleadings, however, and Defendants' Motions are thus GRANTED on the basis that Plaintiff has failed to properly allege causation as well.

///
///
///
///

**CONCLUSION**

Defendants' Motions to Dismiss (ECF Nos. 36, 38) are each GRANTED with final leave to amend.  Not later than twenty (20) days following the date this Memorandum and Order is electronically filed, Plaintiff may, but is not required to, file a second amended complaint.  If no second amended complaint is timely filed, the causes of action disposed of by virtue of this Memorandum and Order will be deemed dismissed with prejudice upon no further notice to the parties.

IT IS SO ORDERED.

Dated:  September 29, 2023

MORRISON C. ENGLAND, JR
SENIOR UNITED STATES DISTRICT JUDGE